Mrs. Mary I. CAMPBELL, Plaintiff

v.

SOUTHERN RAILWAY COMPANY,
Defendant.

Civ. A. No. 6924.

United States District Court
N. D. Georgia,
Atlanta Division.

Oct. 27, 1961.

Robert B. McCord, Jr., Hapeville, Ga., and Hamilton Lokey, Atlanta, Ga., for plaintiff.

Greene, Neely, Buckley & DeRieux, Atlanta, Ga., for defendant.

MORGAN, District Judge.

The plaintiff in this case seeks to recover damages for the death of her minor son, who was killed when hit by a train of defendant on a trestle which supports a double track, spanning Peachtree Creek, inside the city limits of Atlanta, Georgia.

The case came on to be tried to the Court without a jury, and after hearing the evidence and receiving the briefs and written arguments of counsel, the case is now properly before the Court for determination.

Giving consideration to the evidence in the case, the Court makes the following

### Findings of Fact

The plaintiff is a citizen and resident of the State of Georgia, residing in Fulton County within the Atlanta Division of the Northern District of Georgia; the defendant is a corporation, incorporated under the laws of the State of Virginia; and the matter in controversy, exclusive of interest and costs, exceeds $10,000.

On August 30, 1958, plaintiff's son, John Robert Campbell, Jr., a minor, thirteen and one-half years old, was on a hike with his father, plaintiff's husband, John Robert Campbell, Sr. They were returning from their hike along the side of Peachtree Creek, traveling in an easterly direction, and at approximately 4:35 p. m., said son and husband reached the defendant's right-of-way and a trestle which spans Peachtree Creek within the city limits of Atlanta.

The trestle was owned and maintained by the defendant and was approximately 312 feet long, supporting two tracks, and running generally north and south. The highest point of said trestle is approximately 50 feet above said Peachtree Creek.

Approximately 600 feet north of the trestle the tracks turn sharply to the left. Where the tracks turn sharply to the left, they turn behind a large embankment which would hide the trestle from a train crew approaching from the north until within approximately 700 feet of said trestle.

South of the trestle, the tracks curve gradually to the right for a train proceeding in a southerly direction.

Prior to August 30, 1958, defendant had erected no signs or barriers showing any objection by the defendant to the use of said trestle as a crossway by the public.

Just before plaintiff's son and husband reached the trestle, a train came across the trestle on the west track headed toward Atlanta. Said plaintiff's son and husband stood aside to let it pass, and then went upon the trestle, crossed Peachtree Creek, walking upon the west track of the trestle proceeding in a northerly direction across the trestle. When plaintiff's son and husband had traversed approximately two-thirds of the trestle, they heard a train coming from the north, which was traveling in the same direction as the previous train, and they then moved over to the east track. When the train appeared from behind the bank, plaintiff's son and husband saw that they were on the same track as the oncoming train, and they immediately began to move back toward the west track; but before plaintiff's son and husband could get out of the way, the train brushed plaintiff's husband, and rolled over plaintiff's son, killing him.

Defendant's train was Train No. 29 and consisted of an engine (two Diesel units) and eleven cars, the entire train being 896 feet in length. After plaintiff's son was struck, the train continued on past the point of impact, and the last car of the train was about 700 feet beyond the point of impact. The train crew on defendant's train were D. M. Clodfelter, Conductor; L. B. Couch, Engineer; and J. P. Fitzpatrick, Fireman. J. P. Fitzpatrick, the fireman, was operating the engine, being qualified as an engineer.

South of the trestle and to the east of the railroad tracks aforesaid, there is a small community of houses and a paved

street named Mayson Street, running parallel to the tracks and dead-ending near the trestle. From said street, there is a well-defined pathway to the tracks, continuing to the edge of the trestle, and said trestle is used by members of the community as a means of getting across Peachtree Creek to the Lindbergh Drive-Peachtree Hills area. This pathway has been in continuous, uninterrupted use by the public for more than ten years. Some of the employees of the defendant had been seen waving and had observed members of the public crossing this trestle, and Engineer Couch had on at least two occasions seen young boys out on the trestle, and had actual knowledge that persons other than railroad employees had been out on the trestle prior to August 30, 1958. Both L. B. Couch, Engineer, and J. P. Fitzpatrick, Fireman (who was actually operating the engine) were familiar with the fact that the engineer and fireman of a train traveling in a southerly direction approaching said trestle could not see the trestle until they were approximately 700 feet north of the trestle. Once Train No. 29 had passed the embankment north of said trestle there was nothing to obstruct the view of the trestle and the plaintiff's son thereon.

At said time and place there was in full force and effect a valid ordinance of the City of Atlanta known as Section 48.8 of the Atlanta City Code, as follows:

> "Section 48.8—Speed of Trains. No train shall run anywhere within the City at a greater rate of speed than 25 miles per hour. No person in authority shall issue or cause to be issued any order requiring a greater rate of speed than 25 miles per hour at any place within the City."

On August 30, 1958, Train No. 29 was being operated at a speed in excess of 55 miles per hour as the engine turned from behind a large embankment approximately 700 feet north of said trestle, and defendant's said train was being operated at a speed in excess of 45 miles per hour at the time plaintiff's son was struck on said trestle. From the time that the defendant's agent Fitzpatrick applied the brakes after seeing plaintiff's minor son on the track, there would have been very little change in speed from that time until the minor was struck.

On August 30, 1958, plaintiff's son was 13 years, 5 months, and 10 days old, and had a life expectancy, according to the American Experience Mortality Tables, of 46.80 years.

On August 30, 1958, there were no planks laid along said trestle between the rails or parallel to the rails for the purpose of being used as a walkway across said trestle.

No order by anyone in authority for the defendant had ever been issued notifying Engineer Couch and Fitzpatrick of the ordinance of the City of Atlanta, restricting the speed to 25 miles per hour within the city limits, and Engineer Couch was not familiar with the city limit boundaries approaching the limits from the north.

On August 30, 1958, when Train No. 29 came around the curve traveling at a speed of 55 miles per hour, employee Fitzpatrick saw the plaintiff's minor son and husband on the trestle. Even though Fitzpatrick applied the emergency brakes of the entire train, there was very little change in speed of the train at the time the plaintiff's son was struck.

Plaintiff's son, John Robert Campbell, Jr., was a normal 13 to 14-year-old boy, with good mental and physical development.

Plaintiff, by reason of the loss of her son, has been injured and damaged in the sum of $30,000.00.

■ The defendant was negligent in failing to observe the valid and subsisting ordinance of the City of Atlanta, which prohibits the operation of trains anywhere within the city at a greater rate of speed than 25 miles per hour, in that its employee Fitzpatrick was operating Train No. 29, on August 30, 1958, at a rate of speed of 55 miles per hour at a point 700 feet north of the Peachtree Creek trestle, which traverses Peachtree Creek, considering the fact that the locality was a populous one within the lim-

its of a large, incorporated city, where said defendant was under a duty to anticipate that someone might be upon the trestle.

The defendant was negligent in not advising and directing those employees in charge of operating its trains, to-wit: Engineer Couch and Fireman Fitzpatrick, the boundaries of the city limits of Atlanta, and of the speed limitations placed thereon by valid ordinance of the City of Atlanta in Section 48.8 of the Atlanta City Code.

Plaintiff's minor son of thirteen and a half years of age was negligent in going upon the double-track trestle traversing Peachtree Creek, which is approximately 50 feet below the trestle.

The negligence of the plaintiff's son contributed to, but was not the sole proximate cause of his death, and the negligence of plaintiff's son did not equal nor exceed the negligence of the defendant.

The negligence of the defendant was greater than the negligence of the plaintiff's son and was the preponderating proximate cause of the plaintiff's son's death.

The Court finds that twenty-five percent of the fault is attributable to the plaintiff's son.

### Conclusions of Law

This Court has jurisdiction of this case by reason of the provisions of Section 1332 of Title 28 United States Code.

■ In deciding whether ordinary care was exercised in the given case, the conduct in question must be considered in the light of all the surrounding circumstances as shown by the evidence. Otis Elevator Company v. Rogers, 33 Ga. App. 181, 188, 125 S.E. 763.

Under the Georgia law, where the undisputed evidence in a case shows that the killing of the deceased by the defendant's train was within the corporate limits of a municipality, and that at the time of the injury the train was running at a rate of speed in excess of the speed limitations as provided in a valid municipal ordinance, the defendant operator of the train at the time of the injury was guilty of negligence per se. Wright v. Southern Railway Company, 139 Ga. 448, 449, 77 S.E. 384; Central of Georgia Railway Company v. Bond, 111 Ga. 13, 36 S.E. 299.

■ Under the Georgia law, whether plaintiff's son was a trespasser, licensee, or invitee, and was at a place where the railroad had, under the alleged facts, impliedly invited him to cross the tracks, the servants of the company, considering the fact that the locality was a populous one within the limits of an incorporated town, and considering the frequency of the use of the crossing, were under a duty to anticipate that someone might be upon the track. Central of Georgia Railway Company v. Sharpe, 83 Ga.App. 12, at page 21, 62 S.E.2d 427, at page 433.

■ Under the Georgia law, when persons habitually, with the knowledge but without the disapproval of the railroad, use private passageway crossing, the railroad's employees, who are in charge of its train, and who are aware of the custom, are bound to anticipate that persons may be upon the tracks at such point and have duty to exercise ordinary care and diligence to prevent injury to such persons. Atlantic Coast Line Railroad Company v. Futch, 5 Cir., 263 F.2d 701.

The Georgia law further provides that no person shall recover damages from a railroad company for injury to himself or his property where the same is caused by his own negligence. If the decedent son and the agents of the company are both at fault, complainant may recover, but the damages shall be diminished by the jury in proportion to the amount of fault attributable to him. Code of Georgia, § 94–703.

■ Infants under fourteen years of age are chargeable with contributory negligence resulting from want of such care as their mental and physical capacity fits them for exercising, and assume risks of those patently obvious and known dangers which they are able to appreciate and avoid. Evans, by next friend v.

Josephine Mills, 119 Ga. 448, 46 S.E. 674.

■ Code Section 94–703 of the Code of Georgia is applied in Georgia where the negligence of the plaintiff equals or exceeds that of defendant, and in such cases there can be no recoveries; but if the negligence of the plaintiff is less than that of the defendant, and the plaintiff is otherwise entitled to recover against the defendant, the total amount of damages in dollars and cents should be diminished in proportion to the amount of fault attributable to the plaintiff. Georgia Railway and Power Company v. Belote, 20 Ga.App. 454(2), 93 S.E. 62.

■ Questions of negligence, proximate cause and failure to exercise due care in avoiding the consequences of another's negligence, or where the conduct charged and relied on as negligence is such that different minds might reasonably draw different conclusions therefrom, are for the trier of the facts. Grand Trunk Railway Company of Canada v. Ives, 144 U.S. 408, 417, 12 S.Ct. 679, 36 L.Ed. 485; Southern Railway Company v. Slaton, 41 Ga.App. 759, 154 S.E. 718.

■ Whether or not the locality, the time, and the circumstances of injury to one using the right-of-way of a railroad, and the known habits and frequency of the public in using it, create such a condition as will charge the servants of the company operating the locomotive and the cars with a special duty of looking out for the presence of a trespasser at the time and place of the injury, is a question for the trier of the facts, in the light of all the evidence introduced. Pope v. Seaboard Air Line Railway, 21 Ga.App. 251, 94 S.E. 311; Crawford v. Southern Railway Company, 106 Ga. 870, 33 S.E. 826.

The concurrent contributory negligence of the plaintiff's son struck by a train negligently operated by the defendant does not bar recovery for his death, but is ground for reduction of damages under Georgia law. Code of Georgia, § 94–703.

The plaintiff is entitled to recover, but the damages shall be diminished in proportion to the amount of fault attributable to the plaintiff's son.

A judgment in accordance with these findings and conclusions may be prepared and presented.