**GORDON MAILLOUX ENTERPRISES, INC., and Merchants Wholesale Co., Inc., Appellants,**

v.

**FIREMEN'S INSURANCE COMPANY OF NEWARK, NEW JERSEY,** Appellee.

No. 19165.

United States Court of Appeals Ninth Circuit.

Sept. 30, 1966.

---

W. Scott Barrett, Walter Ferenz, Barrett, Ferenz & Trapp, Oakland, Cal., and Agana, Guam, for appellants.

Florindo M. DeRosa, New York City, E. R. Crain, Agana, Guam, Henry G. Sanford, San Francisco, Cal., for appellee.

Before ORR,* KOELSCH and DUNIWAY, Circuit Judges.

KOELSCH, Circuit Judge.

After typhoon Karen had devastated the Island of Guam on November 11 and 12, 1962, a number of persons demanded indemnity for property damage from Firemen's Insurance Company. They rested their claims upon binders and policies of typhoon insurance made and executed on behalf of Firemen's by one Edward Fritsche, a local insurance agent, who conducted business through a controlled corporation.

Firemen's refused payment on the principal ground that it had not insured the property prior to the typhoon; additionally it commenced this action for a declaratory judgment of nonliability. The policy holders in turn sought affirmative relief. Trial to a jury resulted in verdicts for Firemen's as to some defendants and against it as to others. This appeal concerns only the defendants Merchants Wholesale Co., Inc., and Gordon Mailloux Enterprises, Inc.

## I.

■■ The jury found for Merchants, but the court on Firemen's motion entered judgment notwithstanding the verdict. This disposition was error, for consideration of the proof favorable to Merchants [Railway Express Agency, Inc. v. Mallory, 168 F.2d 426 (5th Cir. 1948)] reveals "substantial evidence" [Butte Copper & Zinc v. Amerman, 157 F.2d 457, 458 (9th Cir. 1948)] to support the jury's determination. Both Fritsche and Luce, Merchant's president and manager, were among the witnesses; they gave testimony to the effect that the matter of typhoon coverage for Merchants had been discussed and the details adequately settled upon at a meeting between them on November 8, and that two days later Fritsche made and delivered to Mrs. Luce the written binder which evidenced Firemen's commitment to insure Merchants against such loss.[1]

Our conclusion that the present judgment cannot stand does not necessarily require entry of judgment on the verdict. Firemen's moved for judgment N.O.V. or, in the alternative, for a new trial on the ground, among others, that the verdict was against the clear weight of evidence. Fed.R.Civ.P. 50(b); Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 250, 61 S.Ct. 189, 85 L.Ed. 147 (1940).

■■ The court was not limited to a choice between the two motions and, since each had its own office, the ruling upon the one did not dispose of the other. In recognition of the different considerations underlying these respective mo-

---

* Judge Orr heard the argument in this case, but died before this opinion was prepared.

1. The formal policy of insurance, although dated November 10, 1962, was in fact not issued until November 23, 1962; however, Firemen's, recognizing the rule that a valid binder will impose a present obligation, in accordance with the terms of a policy ordinarily issued to cover like risks, [Republic Insurance Co. v. French, 180 F.2d 796 (10th Cir. 1950)] did not urge that the asserted binder would not cover this particular risk, but rather contended that no such binder was in fact given before the typhoon.

tions, and to expedite the ultimate disposition of litigation, Rule 50(c) (1) and (d), in effect at the time the motions were made, required rulings on both.[2] However, the court made no conditional ruling on the motion for new trial. We have, it is true, held that upon reversal of a judgment N.O.V., in which a new trial was conditionally granted, this court might also reverse the latter order and direct entry of judgment on the verdict forthwith. Moist Cold Refrigerator Co. v. Lou Johnson Co., 249 F.2d 246 (9th Cir. 1957), cert. denied. 356 U.S. 968, 78 S.Ct. 1008, 2 L.Ed.2d 1074 (1958). But in this case, even if the trial court so ruled, we would not overturn the order, for here the evidence is such that the decision is properly one for the trial court in the exercise of its discretion. The trial court must now act upon the undisposed-of motion.

## II.

■ The judgment against Mailloux was entered pursuant to the jury's verdict. We conclude it too must be reversed; although the errors requiring reversal, if considered separately, were perhaps harmless, their cumulative effect was prejudicial.

Mailloux's proof in substance was that he had received an oral binder on about October 30, a written binder shortly after the loss had occurred on November 11–12 and the formal policy of insurance on November 23. Thus, his claim rested upon the oral binder. By an instruction to which Mailloux duly excepted, the court advised the jury that certain regulations promulgated by the insular commissioner of insurance required a written policy of insurance to issue within five days after such a binder was given. From this, the jury might well have in-

ferred that Mailloux's policy was void. The regulations were not made part of the record, but the Acting Deputy Commissioner of Insurance, in response to counsel's questions, affirmed that they "governed insurance companies primarily," that "they don't say anything about people in particular that the insurance companies are issuing insurance to," and "that they don't regulate the policyholder. * * *"

■ Since a violation of regulations of this type does not impair rights of third persons against an insurer [See: Posner v. United States Fidelity & Guaranty Co., 33 Misc.2d 653, 226 N.Y.S.2d 1011, aff'd, Posner v. New York Mut. Underwriters, 16 App.Div.2d 1013, 229 N.Y.S.2d 160 (1962); and Corbett v. Physicians Casualty Ass'n, 135 Wis. 505, 115 N.W. 365, 16 L.R.A.,N.S., 177 (1908)] the instruction should not have been given. Nor can we conclude with any degree of assurance that the instruction was rendered totally innocuous by the court's further cryptic advice that "these defendants are not to be held responsible for the failure of a general agent to conduct the business properly."

■ We are also convinced that in charging the jury the judge exceeded "inherent limitations" [Quercia v. United States, 289 U.S. 466, 470, 53 S.Ct. 698, 77 L.Ed. 1321 (1933)] imposed upon his right to comment upon the evidence and express his opinion on the facts. He did, it is true, preface his remarks with the general statement that the jury was at liberty to ignore his analysis and disregard his views; but he then proceeded to characterize the defendants and labor their case in a way that would likely indelibly implant his conclusions in the minds of the jurors and preclude a "fair

2. Rule 50(c) (1) in pertinent part read:
    (c) (1) If the motion for judgment notwithstanding the verdict, provided for in subdivision (b) of this rule is granted, the court shall also rule on the motion for new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for the new trial. If the motion for a new trial is thus conditionally granted, the order does not affect the finality of the judgment. In case the motion for a new trial has been conditionally granted and the judgment is reversed on appeal, the new trial shall proceed unless the appellate court has otherwise ordered.

and dispassionate consideration of the evidence." Quercia v. United States, supra, at 472, 53 S.Ct., at 700.[3]

■ The court also erred in failing to adequately and clearly define to the jury Fritsche's power to transact business for Firemen's and the effect on Firemen's of insurance agreements he made with third persons.

■ The fact of agency was raised as an issue by the pleadings, but during the trial, counsel expressly stated that Fritsche was Firemen's duly appointed "general agent" at the time of the disputed transactions. This concession eliminated the necessity of proof on that subject, for by statute [Government Code of Guam 43003(p)] " 'General Agent' means a person authorized by an insurer to countersign, issue and deliver new policies, to accept service of process on behalf of the insurer, and vested with full authority to consummate a contract of insurance and to transact all other necessary business of the insurer in Guam."

However, the court merely told the jury that "a general agent is one who is authorized by his principal, the insurance company, to conduct business on its behalf which the principal might conduct directly." This terse statement is no doubt correct, as far as it goes, but lacks much in certainty and would require a jury to speculate whether the reference was to all or merely some kinds of the insurer's business.

■ Firemen's contends, however, that Mailloux may not now complain; it urges that the defendants' requests for instructions—which included one that set out the general agent's powers in the language of the statute—were untimely and the trial court was therefore acting within its discretion in disregarding them. Rule 51 of the Civil Rules directs that requests be filed "[a]t the close of the evidence or at such earlier time during the trial as the court reasonably directs * * *." In this case, the court specified no time and the requests were submitted four days before the evidence was closed. But the court received the requests without objection and must have led counsel to believe they would be acted upon, for he penned a notation upon them that "These instructions were presented to the court on Thursday, Oct. 24, 1963 for consideration." Nor can Mailloux be faulted for failing to make timely objection to the court's failure to give them, for he again called the requests to the court's attention following the court's own charge and before the jury had retired.[4]

The judgments are reversed and the cause is remanded to the district court for further proceedings consistent with this opinion.

3. For example, the court said:
"I am not trying to sum up in favor of the plaintiff in this case against these defendants. We simply have to face realistically the fact that the days of Robin Hood have passed and the law does not permit anyone to steal from the rich to give to the poor."
When counsel protested, the judge compounded the error, saying:
"The court reminds you that the comment of the court as to Robin Hood and the days have passed when you may steal from the rich and give to the poor is a general statement only and should be completely ignored by you if you feel that it is unwarranted directly or by implication in this case."
Similarly, in discussing Mailloux's assertion that he had been permitted to purchase the typhoon insurance on credit, the court sarcastically opined that "Fritsche was one of God's Noblemen."

4. It is inappropriate to discuss the remaining requests, for their giving or refusal will depend upon the turn of the evidence at a new trial.